*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SNM PHYSICAL THERAPY LLC,

        Plaintiff-Appellant,

v

CITIZENS INSURANCE COMPANY OF THE MIDWEST,

        Defendant-Appellee.

UNPUBLISHED
July 17, 2026
11:09 AM

No. 375649
Wayne Circuit Court
LC No. 23-015596-NF

Before: GADOLA, C.J., and BOONSTRA and CAMERON , JJ.

PER CURIAM.

Plaintiff, SNM Physical Therapy LLC, appeals as of right the trial court's order granting defendant, Citizens Insurance Company of the Midwest, summary disposition under MCR 2.116(C)(10). We affirm.

## I. FACTS

Ilham Elrahazoui was involved in a motor vehicle collision on September 25, 2022, and allegedly was injured. At the time of the collision, Elrahazoui was insured under a policy of no-fault insurance issued by defendant. After the collision, plaintiff treated Elrahazoui with Nervomatrix/Trigger Point Impedance Imaging (TPII). The treatment is intended to provide back pain relief by using "Electric Hyperstimulation Analgesia to targeted myofascial trigger points identified through a proprietary algorithm that measures skin impedance." Elrahazoui thereby incurred medical expenses allegedly totaling $140,300. Elrahazoui allegedly assigned her claim for payment to plaintiff, and plaintiff submitted the claim to defendant for payment. Defendant denied payment on the basis that plaintiff had failed to present evidence that the TPII treatment was medically efficacious.

Plaintiff initiated this action seeking payment for the medical expenses under MCL 500.3157. Defendant moved for summary disposition under MCR 2.116(C)(10). Defendant argued that it was not obligated to pay for the TPII services because plaintiff had not presented

medical proof that the Nervomatrix/TPII treatments were efficacious and thus reasonably necessary for Elrahazoui's care as required under *Krohn v Home-Owners Ins Co*, 490 Mich 145; 802 NW2d 281 (2011). Defendant supported its motion with the opinion of Dr. Adil Ali who asserted that use of the Nervomatrix device was not a generally accepted medical treatment. Dr. Ali opined that the algorithm by which the device allegedly detects trigger points in a patient is unknown, making it impossible to verify whether and how the device is performing its asserted function, and that

> [T]here is no definitive scientific medical basis for how the Soleve Nervomatrix device detects trigger points and functions to provide pain relief. Finally, there is no objective and verifiable medical evidence that the use of the Soleve Nervomatrix device is efficacious for the treatment of acute or chronic painful neurological and musculoskeletal conditions, particularly low back pain or painful myofascial trigger points.

> The *Gorenberg* study was an uncontrolled pilot study that did not demonstrate that the Nervomatrix device is superior to placebo. . . . The *Ferrandiz* study demonstrated that the Soleve Nervomatrix device does not result in a better outcome than placebo-treatment in terms of pain, pain behavior, functioning, central sensitization, pain catastrophizing, and health benefits.

> The clinical value of the Soleve Nervomatrix device has not been established. There is no definitive scientific medical basis for how the Soleve Nervomatrix device detects trigger points, or that the trigger points that it identifies exist. Therefore, there is no evidence that the Soleve Nervomatrix device treats anything at all. The Soleve Nervomatrix device is not the accepted medical standard for diagnosing and treating acute or chronic painful neurological and musculoskeletal conditions, particularly low back pain or painful myofascial trigger points.

Dr. Ali further opined that the studies ostensibly establishing the efficacy of the Nervomatrix device were funded by the manufacturer of the device, and that no other placebo-controlled study documented the efficacy of the device. Defendant also supported its motion with a study finding that treatment with the Nervomatrix device was not superior to placebo in a randomized clinical trial. Defendant argued that it anticipated that plaintiff would rely on the report of Dr. William McGee, which was based upon studies done by the manufacturer of the Nervomatrix/TPII device.

Plaintiff responded to the motion relying upon the report and affidavit of Dr. William McGee, which in turn relied in part upon the *Gorenberg* and the *Ferrandiz* studies. Dr. McGee described generally the algorithm by which the Nervomatrix purportedly identified trigger points and opined that "this sophisticated algorithm allows for precise identification of MTPs, which is crucial in developing targeted treatment strategies for low back pain. By pinpointing these specific areas of pain generation, the device enables more focused and effective therapeutic interventions. Dr. McGee further stated:

> By targeting the underlying neurophysiological mechanism of the nervous system in pain processing and tissue healing, this technology offers a novel approach to pain management and rehabilitation. The device's ability to identify and treat MTPs

with precision addresses a critical aspect of low back pain that is often overlooked in conventional treatments. . . . Additional research and larger clinical trials are recommended to further establish the device's efficacy and integration into standard therapeutic protocols for soft tissue lesions to define the full potential of the Nervomatrix technology and its integration into clinical practice.

The trial court granted defendant's motion for the reasons stated in defendant's motion and supporting brief. Plaintiff now appeals.

## II.    DISCUSSION

Plaintiff contends that the trial court erred by granting defendant summary disposition of plaintiff's claim. Plaintiff argues that the Nervomatrix/TPII treatment is not experimental and also that it presented objective evidence that the Nervomatrix/TPII treatment was efficacious and thereby created a genuine issue of material fact. We disagree that the trial court erred.

We review de novo the trial court's order granting summary disposition. *Jostock v Mayfield Twp*, 513 Mich 360, 368; 15 NW3d 552 (2024). A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of the claim and is warranted when there is no genuine issue of any material fact. *El-Khalil, Inc v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019). In considering the trial court's grant or denial of a motion for summary disposition under MCR 2.116(C)(10), we consider the documentary evidence submitted by the parties and view it in the light most favorable to the non-moving party. We will find a genuine issue of material fact if the record leaves open an issue on which reasonable minds might disagree. *Id*. We also review de novo the application and interpretation of statutes, which are questions of law. *Krohn*, 490 Mich at 155.

Under the no-fault act, MCL 500.3101 *et seq*, personal protection insurance benefits are payable for "[a]llowable expenses consisting of reasonable charges incurred for reasonably necessary products, services and accommodations for an injured person's care, recovery, or rehabilitation." MCL 500.3107(1)(a). The services for which payment of benefits is sought must be both (1) objectively reasonable and (2) necessary for an insured's care, recovery or rehabilitation. *Krohn*, 490 Mich at 163. A treatment that is experimental and not generally accepted in the medical community is not reasonable or necessary under the no-fault act unless it is demonstrated to be efficacious. *Id*. at 148. In *Krohn*, our Supreme Court explained that

> [I]f a medical treatment is experimental and not generally accepted within the medical community, an insured seeking reimbursement for this treatment must, at a minimum, present objective and verifiable medical evidence establishing that the treatment is efficacious. A treatment or procedure that has not been shown to be efficacious cannot be reasonable or necessary under the no-fault act. An insured's subjective belief that medical treatment is efficacious, reasonable, and necessary is not enough to create a question of fact. [*Krohn*, 490 Mich at 148.]

The Supreme Court in *Krohn* further explained that "the term 'reasonably' must be determined under an objective perspective." *Krohn*, 490 Mich at 160. If a plaintiff fails to demonstrate that an expense was incurred for a reasonably necessary product or service, a court

may not find that an insurer breached its duty to pay that expense. *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 50; 457 NW2d 637 (1990).

Generally, it is a question of fact whether the services or products provided were reasonably necessary. *Krohn*, 490 Mich at 157-158. However, in some cases, it may be possible for the trial court to decide the reasonableness or necessity of an expense as a matter of law. *Id*. at 158. A procedure or treatment accepted by the medical community is more likely to be presumed necessary than a treatment that is either experimental or otherwise not generally accepted by the medical community. See *id*. In either scenario, the question is whether the treatment in question was reasonably necessary for the patient's care, recovery or rehabilitation. *Id*. at 159. And in either scenario, the burden of proving that a service is reasonably necessary lies with the plaintiff. See *Nasser*, 435 Mich at 50. To summarize, when a treatment is experimental the plaintiff must demonstrate the reasonableness of the treatment by demonstrating that the treatment is efficacious, and the efficacy must be demonstrated by objective and verifiable medical evidence. *Krohn*, 490 Mich at 163-164. We also note that when reviewing a trial court's decision regarding a motion for summary disposition under MCR 2.116(C)(10), we consider the substantively admissible evidence actually proffered in opposition to the motion rather than considering the mere possibility that a claim might be supported by evidence if the case were to proceed to trial. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999).

In this case, plaintiff sought payment from defendant for Nervomatrix/TPII treatments that Elrahazoui received from plaintiff. Plaintiff asserts that the treatment is accepted in the medical community and that its claim was supported by the report of Dr. McGee. While supporting the use of the Nervomatrix, however, Dr. McGee also described the Nervomatrix treatment as "novel," as an addition to "conventional" treatments, and as requiring additional research to ascertain its efficacy. Defendant presented evidence that certain of the studies upon which Dr. McGee's report relied were conducted by the manufacturer of the Nervomatrix device and that the studies do not demonstrate that treatments with the Nervomatrix device produced better results than placebo treatment. Plaintiff in response did not demonstrate before the trial court that the treatment was accepted in the medical community, nor did plaintiff demonstrate the efficacy of the treatment. The trial court therefore did not err by determining that plaintiff did not create an issue of fact regarding whether the treatment was objectively reasonable and necessary.

Whether an expense is "reasonably necessary" is assessed by an objective standard. *Krohn*, 490 Mich at 178. Based on the record before us, the trial court was within its authority to determine as a matter of law that plaintiff failed to present evidence that the Nervomatrix/TPII treatment administered to Elrahazoui was efficacious and thus failed to demonstrate that the treatment was objectively reasonable or necessary. The trial court therefore did not err by granting defendant summary disposition of plaintiff's claim.

Affirmed.

/s/ Michael F. Gadola
/s/ Mark T. Boonstra
/s/ Thomas C. Cameron

-4-